## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM SCOTT ETHERIDGE, Individually and as Administrator of the Estate of DORIS JEAN ETHERIDGE, Deceased, | : : : : : | Civil No. 1:20-CV-00272 |
| Plaintiff, | : : | |
| v. | : : | |
| WORLD MARKETING OF AMERICA, INC., a/k/a KOZY WORLD, | : : : : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion to transfer venue filed by Defendant World

Marketing of America, Inc., a/k/a Kozy World ("World Marketing") pursuant to 28

U.S.C. § 1404(a).  (Doc. 27.)  The requested venue transfer to the Northern District

of Mississippi is opposed by Plaintiff William Scott Etheridge ("Etheridge").  For

the reasons that follow, World Marketing's motion to transfer venue will be

denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is a products liability action concerning a natural gas space heater.

Etheridge initiated this action via a complaint on February 14, 2020.  (Doc. 1.)

Etheridge then filed a first amended complaint on May 5, 2020, to address an issue

that had been raised by World Marketing in a motion to dismiss.  (Docs. 9, 15, 16.)

The first amended complaint is the operative pleading, and World Marketing has filed an answer and an amended answer.  (Docs. 19, 36.)  The court held a case management conference and entered a case management order on August 5, 2020. (Doc. 26.)

In the first amended complaint, Etheridge contends that he purchased and installed a "Kozy-World KWN191 18,000-BTU Vent-Free Natural-Gas Infrared Wall Heater" ("KWN191") in his personal residence in Holly Springs, Mississippi. (Doc. 16, ¶ 13.)  He alleges that on March 18, 2019, Doris Jean Etheridge, his deceased spouse ("the Decedent"), walked past the KWN191 heater when "the flame protruded outside of the grated barrier of the KWN191 and came into contact with Decedent and caused her shirt to become inflamed."  (*Id.* ¶¶ 15–16.) The Decedent suffered burns to her torso, chest, neck, and face, and ultimately, on April 1, 2019, "passed away due to complications from the burns."  (*Id.* ¶¶ 17–19.) The causes of action alleged by Etheridge on his own behalf and on behalf of the Estate of Doris Jean Etheridge ("the Estate") include one count of strict liability manufacturing and design defect ("Count I"); one count of strict liability failure to warn ("Count II"); and one count of negligence ("Count III").  (*Id.* ¶¶ 26–65.)

On November 13, 2020, World Marketing filed a motion to transfer venue and a brief in support.  (Docs. 27, 28.)  Etheridge filed a brief in opposition and

World Marketing filed a reply brief.  (Docs. 32, 37.)  Accordingly, this motion is ripe for consideration.

### STANDARD OF REVIEW

In evaluating a request to transfer venue, the court must first determine whether venue is proper in this district under 28 U.S.C. § 1391.  The court next evaluates whether a transfer of venue is appropriate and warranted under 28 U.S.C. § 1404(a).  Under 28 U.S.C. § 1404(a), a court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties.  *See Rouse v. Harley-Davidson, Inc.*, No. 1:20-CV-528, 2021 WL 254065, at *2 (M.D. Pa. Jan. 26, 2021).  "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27 (1960)).  Although the district court is given the ultimate discretion in transferring venue, the exercise of this discretion should not be liberal.  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citing *Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)).

Once the propriety of the proposed venue is determined, the court must then balance a variety of public and private interests, either weighing for or against

transfer.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Pa. State Univ. v. Parshall*, No. 4:19-CV-12922, 2020 WL 2217279, at *3 (M.D. Pa. May 7, 2020).  The Third Circuit Court of Appeals has identified the most commonly considered private and public interest factors when deciding a motion to transfer venue.  *Jumara*, 55 F.3d at 879.  As private interest factors, the court should consider: (1) plaintiff's original choice of forum; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties—indicated by their relative physical and financial condition; (5) the convenience of the witnesses—to the extent that the they may actually be unavailable for trial in either fora; and (6) the location of books and records—to the extent they cannot be produced in the proposed forum.  *Id.* (internal citations omitted).  In considering the public interest factors, courts contemplate: (1) the enforceability of the judgement; (2) practical considerations that could make the trial easy, expeditious, and inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with applicable state law in diversity cases.  *Id.* at 879–80.

When weighing these public and private interests, the burden is on the movant to persuade the court that transfer is appropriate.  *Shutte*, 431 F.2d at 25.  "[U]nless the balance of convenience of the parties is *strongly* in favor of

defendant, the plaintiff's choice of forum should prevail." *Id.* (quoting *Owatonna Mfg. Co. v. Melroe Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)) (emphasis supplied).

## DISCUSSION

World Marketing argues that venue should be transferred to the Northern District of Mississippi on *forum nonconveniens* grounds, because this action "alleging claims for negligence and products liability arising out of injury to a Mississippi resident, in Mississippi, allegedly caused by a product purchased in Mississippi, should be transferred to Mississippi pursuant to 28 U.S.C. § 1404(a)." (Doc. 27, ¶ 7.)  Etheridge opposes the motion on grounds that World Marketing has not established that a Mississippi court can exercise personal jurisdiction over it, and also has not satisfied its burden of establishing that the proposed transfer is convenient or in the interest of justice.  (Doc. 32.)

As an initial matter, the court must determine whether venue is proper in this district.  Under 28 U.S.C. § 1391(b)(1), venue is proper in this district because World Marketing resides and has its principal place of business in Huntingdon County, Pennsylvania, which is within the Middle District of Pennsylvania.  *See* 28 U.S.C. § 118(b).  Having found that venue is proper in this district, the court will analyze whether a venue transfer is appropriate under 28 U.S.C. § 1404(a) and

warranted based on consideration of the relevant private and public interest factors set forth in *Jumara*.

### A. The Proposed Transfer Venue is Appropriate Because this Action Could Have Been Filed in the Northern District of Mississippi Originally.

World Marketing asserts that Etheridge could have filed this lawsuit in in the Northern District of Mississippi because the Mississippi long-arm statute would permit the court to exercise personal jurisdiction over it, and venue would be proper in that district under 28 U.S.C. § 1391(b)(2).  (Doc. 28, pp. 5–8.)[1] Etheridge disagrees, arguing that World Marketing has not established that the exercise of personal jurisdiction would comport with the Fourteenth Amendment. (Doc. 32, pp. 3–6.)  World Marketing rejoins that the allegations in the first amended complaint as well as record evidence establish specific personal jurisdiction over World Marketing in Mississippi.  (Doc. 37, pp. 1–5.)

The parties do not dispute that the "commission of a tort" provision in Mississippi's long-arm statute, Miss. Code Ann. § 13-3-57, is satisfied by the claims that World Marketing's negligence and product liability caused injury in Mississippi.  (Doc. 28, pp. 6–7; Doc. 32, p. 3.)  In addition, Etheridge does not disagree with World Marketing's assertion that venue would be proper in the Northern District of Mississippi under 28 U.S.C. § 1391(b)(2), because a

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

substantial part of the events giving rise to the claims occurred within that district. (Doc. 28, pp. 7–8.)

The parties do, however, dispute whether the constitutional requirements for personal jurisdiction are satisfied in this case. The Fourteenth Amendment's Due Process Clause limits a court's power to exercise personal jurisdiction over a defendant to situations in which the defendant had such "contacts" with the forum state that allowing the suit to proceed is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–317 (1945). The Supreme Court has recognized two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. __, 141 S.Ct. 1017, at *5 (Mar. 25, 2021). Only specific jurisdiction is at issue in this case. The contacts needed for specific jurisdiction are often referred to as "purposeful availment." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Even assuming that the defendant has "reached out beyond" its home state into the forum state with some contact that satisfies the requirement of "purposeful availment," the plaintiff's claims must "arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 141 S.Ct. 1017 at *6 (collecting cases).

Upon review of the first amended complaint, Etheridge has alleged that "Defendant World Marketing designed, developed, manufactured, packaged, promoted, marketed, distributed, labeled and/or sold the KWN191 with the expectation that it would reach users and consumers across the United States, including Decedent." (Doc. 16, ¶¶ 29, 42.) It is clear that Etheridge's strict liability and negligence claims arise out of his allegation that World Marketing distributed an allegedly defective heater to him in Mississippi. (*Id.* ¶¶ 13–17.) In addition, World Marketing has filed an affidavit stating that it has sold almost 4,000 heaters and related products to Mississippi customers over the last seven years, accounting for gross revenue of over $3 million, which is over 2% of World Market's gross revenue for that time period. (Doc. 37-1.) And, to make the matter even more clear, World Marketing admits—indeed, insists—that it is subject to specific personal jurisdiction in Mississippi for the claims in this case. (Doc. 37, pp. 1–5.) Accordingly, the court concludes that this action "might have been brought" in the Northern District of Mississippi, which means that the statutory requirement for venue transfer under 28 U.S.C. § 1404(a) is satisfied. Next, the court turns to the balancing of factors set forth in *Jumara* to determine if a venue transfer is warranted.

## B. The Balance of Public and Private Interest Factors Does Not Strongly Favor World Marketing's Requested Transfer.

Not surprisingly, each party argues that the balance of public and private interest factors supports their position. Accordingly, the court will address each of the private and public interest factors to the extent necessary to resolve this matter. *See Jumara*, 55 F.3d at 879–80; *Parshall*, 2020 WL 2217279 at *3.

### 1. The plaintiff's choice of forum

Plaintiff chose to file suit in Pennsylvania (initially in state court and later in federal court). As a general matter, a plaintiff's choice of forum "is a paramount consideration" in resolving a motion to transfer venue, and is given significant weight. *See Shutte*, 431 F.3d at 25. Nonetheless, World Marketing argues that Etheridge's choice of forum deserves less weight because he did not file suit in this court originally and he chose to file suit in a venue that is not his home forum and is not where the "underlying incident occurred." (Doc. 28, pp. 10–12.)

World Market's first argument is not persuasive. Etheridge originally filed suit in the Philadelphia County Court of Common Pleas, and the action was transferred to the Court of Common Pleas in Huntingdon County. Etheridge then voluntarily discontinued the action in state court, and filed suit in this court. (Doc. 28, p. 10; Doc. 32, pp. 6–7.) Accordingly, it was Etheridge's choice to file suit in this forum and he has clearly evidenced a preference to proceed with his suit in Pennsylvania as opposed to Mississippi. This suit was not removed from state

court by World Marketing, which distinguishes this case from the decision cited by World Marketing.  *See Johnson v. Equifax Info. Servs., LLC*, No. 17-CV-1066, 2017 WL 2779568, at *3 (E.D. Pa. June 27, 2017) (finding plaintiff's choice of forum not entitled to weight because plaintiff filed suit in state court and *defendant removed suit to federal court*).

World Marketing's second argument is also not persuasive, although it presents a closer question.  World Marketing accurately asserts that courts frequently give plaintiff's choice of forum less weight when: (a) it is not the plaintiff's home forum; and (b) the vast majority of conduct underlying the claims in the suit occurred outside the chosen forum.  *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 564 (M.D. Pa. 2015); *McCraw v. GlaxoSmithKline*, No. CIV.A.12-2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014); *J.L. Souser & Assocs., Inc. v. J&J Snackfood Corp.*, No. 06-CV-2043, 2007 WL 1217690, at *3 (M.D. Pa. Apr. 24, 2007).  It is true that Etheridge did not file suit in his home forum, which is Mississippi, and this is a factor that serves to undermine his choice of forum to some extent.

The next aspect of World Marketing's argument is the situs of the conduct underlying the claims at issue.  The parties agree that Etheridge purchased, installed, and operated the heater in Mississippi, and that the Decedent was injured

in Mississippi.  (Doc. 28, p. 12; Doc. 32, p. 7.)   The Decedent was hospitalized and eventually passed away in Tennessee.  (Doc. 32, p. 7.)   World Marketing's conduct that underlies the product liability and negligence actions allegedly occurred in Pennsylvania.  (Doc. 32, pp. 7–8.)  Etheridge states in the first amended complaint that the causes of action in this matter "arise in part from a defect in a product that Defendant World Marketing designed, manufactured, distributed, sold and placed into the stream of Pennsylvania commerce."  (Doc. 16, ¶ 7.)  Accordingly, the underlying conduct in this case appears to have occurred in three states:  Mississippi, Tennessee, and Pennsylvania.[2]  Accordingly, World Marketing's argument that *all* of the conduct at issue occurred in Mississippi is not accurate.

On balance, even if *less* deference to Etheridge's choice of forum than usual is warranted because he chose to file suit outside of his home forum, that does not lead the court to conclude that *no* deference is warranted.  Because Etheridge filed suit in this court (after voluntarily discontinuing the action in the Court of Common Pleas in Huntingdon County), this first factor weighs against transfer, although not as heavily as it would if Etheridge were a Pennsylvania resident and

---

[2] Considering the stage of proceedings when the court is asked to resolve this venue issue, the court is not in a position to analyze the factual or legal sufficiency of the pleadings.  Whether any design, manufacture, or warning decisions were actually made in Pennsylvania is a matter to be resolved after consideration of evidence.  *See Rouse*, 2021 WL 254065 at *3.  For present purposes, the court relies upon the allegation in the operative complaint that the alleged product liability defects in the KWN191 heater occurred in Pennsylvania.

all of the conduct at issue occurred in Pennsylvania.  *See Rouse*, 2021 WL 254065 at *3; *Trias v. QVC, Inc*., No. CV 20-813, 2020 WL 2769585, at *2 (E.D. Pa. May 28, 2020).

### 2. The defendant's preference

The court appreciates that World Marketing prefers to litigate this case in the Northern District of Mississippi.  However, this factor "in reality does little more than frame the issue, because there would be no motion to transfer *unless* the defendant prefers a different forum."  *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018).  As a result, this factor is neutral.

### 3. Whether the claim arose elsewhere

World Marketing contends that because the majority of events giving rise to the claims in this case arose in Mississippi, this factor weighs in favor of transfer. (Doc. 28, p. 12.)  However, as previously discussed with respect to the first factor, the alleged conduct giving rise to the claims in this case occurred in Pennsylvania, Mississippi, and Tennessee.  To summarize, Etheridge has alleged that World Marketing's tortious conduct that purportedly gives rise to liability for a defective product occurred in Pennsylvania.  However, the parties agree that the purchase of the allegedly defective product and the injury to the Decedent occurred in Mississippi.  The Decedent was hospitalized and eventually passed away in Tennessee.  In product liability cases, the site of the accident or injury matters to

varying degrees.  *See Rouse*, 2021 WL 254065 at * 4; *Trias*, 2020 WL 2769585 at

*3;  *Blankenship v. Graco Child. Prods., Inc.*, No. CIV.A. 11-04153, 2011 WL

4712419, at *3 (E.D. Pa. Oct. 6, 2011).  In this product liability case, World

Marketing has not presented any argument as to why the site of the Decedent's

injury should matter to a greater degree than the site of the allegedly tortious

conduct.  Accordingly, this factor does not clearly weigh for or against transfer and

is neutral.

### 4.  The convenience of the parties

World Marketing maintains that it is in a better position to travel to

Mississippi than Etheridge is to travel to Pennsylvania because Etheridge is 73

years old, has filed a bankruptcy petition, and would incur significant financial

burdens to have a trial in Pennsylvania.  (Doc. 28, p. 13.)  For his part, Etheridge

asserts that he is in fine physical condition and the necessity of traveling for trial is

not a burden because he is retired and does not have to be concerned about missing

days from employment.  On the other hand, Etheridge argues that World

Marketing's witnesses would have to travel from Huntingdon County,

Pennsylvania, to Mississippi for trial, which would involve travel costs and lost

work time for World Marketing employees.  (Doc. 32, p. 8.)

This factor requires the court to consider the respective burdens on the

parties "as indicated by their relative physical and financial condition."  *Jumara*,

55 F.3d at 879.  World Marketing's assertion that Etheridge will suffer a physical and financial burden in order to travel to Pennsylvania for a trial is speculative, and in any event, denied by Etheridge.  The court agrees with Etheridge that it is far more convenient for World Marketing to try this case in Pennsylvania to avoid the necessity of employees missing work to travel to Mississippi to testify. Accordingly, this factor weighs against transfer.

### 5.  The convenience of potentially unavailable witnesses

World Marketing observes that Etheridge has identified twenty-six potential witnesses in this case, all of whom reside or work within 100 miles of the Northern District of Mississippi and none of whom are within the subpoena power of this district.  Further, World Marketing notes that this district is approximately 1,000 miles away from all known potential witnesses other than World Marketing employees.  (Doc. 28, pp. 13–15.)  Etheridge counters that the twenty-six people are merely "individuals with discoverable information" identified pursuant to Federal Rule of Civil Procedure 26, rather than witnesses who are expected to testify at trial.  Etheridge asserts that these individuals fit into two categories: medical providers who treated the Decedent in Memphis, Tennessee; and family members and friends who may be able to testify to the Decedent's pre-injury condition.  Etheridge asserts that there are no eyewitnesses to the incident, and that the "most important" witnesses in this case are likely to be Etheridge, the

employees of World Marketing, and the parties' respective expert witnesses.  (Doc. 32, pp. 8–11.)

The convenience of the forum for witnesses and those witnesses' amenability to compulsory process are relevant factors.  *See Solomon v. Cont'l Am. Life Ins. Co*., 472 F.2d 1043, 1047 (3d Cir. 1973).  However, when considering the private interest factor of the relative convenience of witnesses, the focus is limited to the witnesses who may "actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.

While World Marketing disagrees with Etheridge's assertion that there is no "eye witness" and protests that they will be unable to compel the attendance of fact witnesses who may not wish to appear voluntarily for trial, World Marketing has not identified a single witness who will be unavailable for trial.  Rather, World Marketing assumes that some or all of the potential fact witnesses who reside in Mississippi will not voluntarily appear for trial in Pennsylvania, and then accurately points out that it will be unable to compel such unavailable witness(es) to appear in this court.  (Doc. 37, pp. 7–8.)  World Marketing bears the burden of persuasion as the movant.  World Marketing does not satisfy its burden merely by stating that there are numerous individuals residing in Mississippi who have been identified as having discoverable information and who may become trial witnesses, and if so, may be unwilling to travel to Pennsylvania.  Similarly, Etheridge has not

15

identified a single witness who is not a current employee of World Marketing who would be unavailable to testify outside of this district.[3]  As a result, this factor is neutral.  *See Rouse*, 2021 WL 254065 at *5 (finding factor neutral where neither party demonstrated that any witnesses would actually be unavailable for trial); *Collins v. Novartis Pharm. Corp.*, No. 13-2363, 2014 WL 6474188, at *3 (D. N.J. Nov. 19, 2014) (finding factor neutral because defendant did not present evidence supporting its claim of unavailable or unwilling witnesses in the forum); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 473 (D. Del. 2013) (finding factor neutral where defendant failed to demonstrate third-party witnesses would be unavailable in the forum); *Smart Audio Techs, LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting this factor is only given weight when there is a specified reason to believe that a witness will actually refuse to testify absent a subpoena).

### 6.  The location of books and records

World Marketing asserts that all relevant records are in Mississippi or Tennessee, whereas Etheridge asserts that the "most important piece of evidence in in this case" (the KWN191 heater) is in Georgia and the as-of-yet unproduced records of World Marketing are in Pennsylvania.  (Doc. 28, pp. 15–16; Doc. 32,

---

[3] Party witnesses and witnesses who are employed by a party "have little impact on the balance of convenience analysis since each party is obligated to procure the attendance of its own employees for trial."  *Chruby v. Bearjar*, No. 3:17-CV-01631, 2018 WL 4051705, at *12 (M.D. Pa. Aug. 24, 2018).

pp. 10–11.)  Regardless of where the "books and records" are located as an original matter, this factor is neutral because modern technology enables the replication or duplication and transmission of documents with ease.  *See Rouse*, 2021 WL 254065 at *5 (collecting cases).

### 7.  The enforceability of the judgment

Neither party has presented an argument regarding the enforceability of a judgment in either forum.  The court is not aware of any reason why this factor presents a concern, and accordingly this factor is not relevant.

### 8.  Practical considerations that could make the trial easy, expeditious, or inexpensive

World Marketing asserts that this factor weighs heavily in favor of transfer, largely based on the same assertions made regarding the party and witness convenience factors.  For the same reasons already discussed, the court finds that these arguments do not favor transfer.  The only new argument raised by World Marketing regarding this factor is that there are "practical concerns regarding World Marketing's ability to implead potentially responsible third-parties in or near the Northern District of Mississippi—where installation, natural gas service, and medical treatment all occurred—as these Mississippi and Tennessee third parties likely lack the requisite ties to Pennsylvania."  (Doc. 28, p. 17.)  Inasmuch as World Marketing has not actually indicated that it intends to implead any

particular party or taken any concrete steps in that direction, this argument is unpersuasive.  The court finds that this factor is neutral.

### 9.  The relative court congestion in the competing courts

World Marketing cites case statistics in support of its argument that the more congested docket in this district favors transfer to the less congested docket in the Northern District of Mississippi.  (Doc. 28, pp. 17–18.)  Etheridge points out that there are more judges in this district, and the number of cases, standing alone, is not a relevant metric.  (Doc. 32, p. 11.)  World Marketing has not presented any evidence of undue delay arising from congestion or any other administrative obstacle to this case proceeding in a timely manner in this district.  Accordingly, this factor is neutral.  *See, e.g.*, *York Grp., Inc. v. Pontone*, No. CIV.A. 10-1078, 2014 WL 3735157, at *13 (W.D. Pa. July 28, 2014) ("Court congestion is not a decisive factor; it must be weighed against all other relevant factors, and district courts have not placed 'great importance' on this factor.").

### 10. The local interest in deciding local controversies at home

World Marketing argues—and Etheridge does not dispute—that there is a greater degree of local interest in having this case decided in Mississippi.  (Doc. 28, p. 18; Doc. 32, p. 12.)  The court does not agree.  In fact, both Pennsylvania and Mississippi have an interest in deciding the issues in this case.  Etheridge and the Decedent are Mississippians and the incident occurred in a Mississippi home.

But World Marketing is a Pennsylvania corporation, the KWN191 heater was designed and manufactured in Pennsylvania, and, as far as the court is aware, World Marketing continues to do business in Pennsylvania today. Because the court perceives local interest in both fora, this factor is neutral. *See Rouse*, 2021 WL 254065 at *6.

### 11. The public policies of the fora

World Marketing contends that Mississippi has a greater public policy interest in this case because of the state's interest in protecting its citizens from harms caused by foreign corporations. (Doc. 28, p. 19.) Etheridge does not disagree, but asserts that although this factor favors transfer, it does not do so "heavily enough to tip the scales away from the Plaintiff's original choice of venue." (Doc. 32, p. 12.)

The court notes the general proposition that "a state's interest in protecting its citizens from foreign corporations outweighs a state's interest in regulating corporations within its borders." *Kiker v. SmithKline Beecham Corp.*, Civ.A. No. 14-1445, 2014 WL 4948625, at *10 (E.D. Pa. Oct. 1, 2014) (collecting cases). Etheridge has not presented any competing public policy interest for the court to consider, and so the court finds that this factor favors transfer.

### 12. The familiarity of the trial judge with the applicable state law

World Marketing acknowledges that Pennsylvania choice of law rules will apply in either forum, but then argues that Mississippi law will ultimately apply based on a choice of law analysis.  On that basis, World Marketing contends that this factor favors transfer because a Mississippi federal district court will be more familiar with Mississippi substantive law than this court.  (Doc. 28, pp. 20–21.) Etheridge points out that the choice of law issue is not before the court, and argues that this factor is neutral because this court is capable of applying Mississippi substantive law if it decides that is appropriate.  (Doc. 32, pp. 12–13.)

As both parties correctly observe, the district court in either fora is constrained to apply Pennsylvania law in the choice of law analysis.  *See Van Dusen*, 376 U.S. at 639 (holding that a transfer of venue pursuant to 28 U.S.C. § 1404(a) is simply a "change of courtrooms" and should not effect a change in the applicable law).  However, this choice of law issue has not been fully briefed in this case, and the court is not in a position to make a conclusive determination on this issue at this time.  In any event, "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013).  This factor, therefore, is neutral because the district court in either fora is "more than capable" of applying another state's law. *McCraw*, 2014 WL 211343 at *7.

## CONCLUSION

After careful consideration of the foregoing private and public interest factors pursuant to *Jumara*, the court concludes that the requested venue transfer is not warranted.  Most of the factors are neutral in this case and do not clearly favor either party's position.  However, the sole factor that favors transfer—the public policy interest of Mississippi in protecting its citizens from injury caused by a foreign corporation—does not outweigh the factors tilting the scale against transfer.  In this case, the plaintiff's choice of forum prevails because the balance of private and public interest factors do not weigh strongly enough in favor of transfer.  *See Shutte*, 431 F.2d at 25.  In sum, World Marketing has not met its burden of persuading this court that the transfer is either more convenient or in the interest of justice.  Accordingly, World Marketing's motion to transfer venue will be denied.  A separate order shall be issued in accordance with this memorandum.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  April 21, 2021